**CITY OF FAIRLAWN (State of Ohio), Appellant,**

v.

**SKOBLAR Appellee.**

[Cite as *Fairlawn v. Skoblar* (1997), 122 Ohio App.3d 464.]

Court of Appeals of Ohio,
Ninth District, Summit County.

No. 18126.

Decided Aug. 27, 1997.

*Max Rothal,* Director of Law, *Douglas J. Powley,* Chief City Prosecutor, and *Tracy D. Stoner,* Assistant City Prosecutor, for appellant.

*William Whitaker,* for appellee.

---

SLABY, Judge.

The state of Ohio appeals from the decision of the Akron Municipal Court granting Barry Skoblar's motion to suppress evidence obtained during what was determined to be an unlawful stop and detention. We affirm.

On April 12, 1996, around midnight, a Fairlawn police officer observed the appellee's vehicle exiting Rose Hill Cemetery onto West Market Street. Officer Ames was aware of previous complaints of possible "Devil Worship" and other activities occurring in the cemetery. The complaints were based upon reports of cars entering the cemetery late at night, and different colored candles having been found at various grave sites in the cemetery. Officer Ames observed three young people in the vehicle and turned her patrol car around to follow them. Although the officer did not observe any traffic violations or notice anything irregular with the appellee's operation of his vehicle, she initiated a traffic stop to further investigate the possibility of criminal activity.

When the appellee stepped out of his car, he appeared unsteady and allegedly exhibited other traits that led the officer to believe that he had been drinking.

Officer Ames administered the horizontal gaze nystagmus test and field sobriety tests, and arrested the appellee for driving under the influence.

The appellee moved to suppress any evidence obtained, alleging that he was unlawfully stopped and detained because there was no "reasonable suspicion based upon articulable facts" that a crime had been committed or was about to be committed, and, thus, the stop was constitutionally impermissible. The trial court granted the appellee's motion. The state timely appeals, asserting the following assignment of error:

"The trial court erred in granting appellee's motion to suppress as the officer did have reasonable suspicion based on specific and articulable facts to initiate an investigatory stop."

In *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889, the United States Supreme Court established the standard for reviewing the constitutionality of an investigatory stop. The court held that a police officer who lacks probable cause, but whose observations lead him to reasonably suspect that a particular individual has committed, is committing, or is about to commit a crime may detain that person briefly in order to investigate the circumstances that provoke suspicion. *Id.* at 21–22, 88 S.Ct. at 1879–1881, 20 L.Ed.2d at 909. See, also, *Delaware v. Prouse* (1979), 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660. Although a reasonable suspicion is a less stringent standard than probable cause, it must be supported by objective, specific, and articulable facts. *Terry* at 21, 88 S.Ct. at 1879–1880, 20 L.Ed.2d at 905–906; *State v. Carlson* (1995), 102 Ohio App.3d 585, 590, 657 N.E.2d 591, 594–595.

The question of whether an officer has a reasonable suspicion to make an investigatory stop is to be reviewed by an appellate court *de novo*. *Ornelas v. United States* (May 28, 1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911; *State v. Gutierrez* (July 17, 1996), Medina App. No. 2215–M, unreported, at 6, 1996 WL 397140. Courts are required to exclude evidence obtained by means of seizures and searches found violative of the Fourth Amendment. See *State v. Halczyszak* (1986), 25 Ohio St.3d 301, 302, 25 OBR 360, 360–361, 496 N.E.2d 925; *Mapp v. Ohio* (1961), 367 U.S. 643, 657, 81 S.Ct. 1684, 1692–1693, 6 L.Ed.2d 1081, 1091.

The state argues that Officer Ames made a valid stop that was justified by a reasonable suspicion of possible criminal activity based upon prior incidents in the cemetery, the time of night, and the officer's previous experiences. Officer Ames noticed that the occupants of the vehicle were relatively youthful and it appeared as if they were departing from inside the cemetery grounds. When asked whether she would stop every vehicle that comes out of the cemetery at that time of the night, she answered that she would.

The trial court, after having heard Officer Ames testify as to all the facts and surrounding circumstances, ruled that the stop was unreasonable and not supported by the evidence, stating:

"[T]his is the type of situation the Fourth Amendment was meant to protect against. The fact that the Defendant and two other persons were pulling out of the cemetery late at night does not provide facts sufficient for an investigatory stop. Although there had been problems in the past with vandalism, this does not give license to an officer to seize motorists. If the cemetery is open late at night for vehicles to enter and exit, then visitors should not have to submit to an unwarranted investigatory stop without a *reasonable* suspicion based upon articulable facts that the vehicle occupants are or have been engaged in criminal activity." (Emphasis added.)

When questioned at the suppression hearing, the officer did not acknowledge that she had a "reasonable suspicion" that the appellee had been engaged in criminal activity, but stated only, "There was a possibility." The officer had not observed anything suspicious when she had patrolled the cemetery earlier that evening, and there had not been any complaints or reports of trouble:

."Q. * * * You had no reason to believe that any crime had been committed? You had no facts upon which to believe a crime had been committed in the cemetery, right?

"A. Right.

"Q. Other than the fact that [the appellee] used this place to turn around, you had no other cause to believe that anybody in that car committed a crime? Right?

"A. Yes, sir."

There was also an absence of any moving violations or equipment violations that would have warranted a traffic stop:

"Q. * * * There was absolutely nothing wrong with [the appellee's] driving; isn't that correct?

"A. From what I observed from the point I got behind him, right.

"Q. You observed absolutely nothing incorrect, or out of line, about his driving?

"A. Right."

Nor was any evidence presented that would indicate that the location was considered a "high crime area," which might contribute to the totality of the circumstances in warranting an investigatory stop. See, *e.g., State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491. Testimony alluded to reports of

"Devil Worship," but the record did not indicate that any of the reported incidents rose even to the offense of criminal mischief, where a person moved, defaced, damaged, destroyed, or otherwise improperly tampered with the property of another.

The facts in this case are clearly distinguishable from another recent case where this court found that the officer provided specific and articulable facts to justify his investigative stop of a vehicle. See *State v. Lively* (July 7, 1997), Medina App. No. 2632–M, unreported, 1997 WL 416466. In *Lively,* the officer testified that he was specifically assigned to the area because of the criminal vandalism occurring at the schools near the time of graduation. Moreover, the officer observed the driver of the vehicle remain stopped at a stop sign for approximately two minutes. Because of the vehicle's extended interlude at the stop sign, late at night, in close proximity to the school, where criminal activity was a "common occurrence" at that time of the year, the officer testified that he believed that the driver of the car may have been dropping off others to commit acts of vandalism.

In contrast, the record in the case *sub judice* was devoid of any recent criminal activity, vandalism, or otherwise, and there was nothing improper or unusual about the driver's operation of the vehicle. The officer herself declined to testify that her potential concerns rose to the level of a "reasonable suspicion." Based upon the record before us, we do not find that the state met its burden of demonstrating reasonable suspicion sufficient to justify stopping the appellee.

The appellant's assignment of error is overruled, and the trial court's ruling on the motion to suppress is affirmed.

*Judgment affirmed.*

QUILLIN, P.J., concurs.

REECE, J., dissents.

REECE, Judge, dissenting.

I dissent on the authority of *State v. Lively* (July 7, 1997), Medina App. No. 2632–M, unreported, 1997 WL 416466. I would reverse the judgment below and deny the motion to suppress.