**CITY OF AKRON**

v.

**LITTLE.**

Akron Municipal Court, Ohio.

No. 98 TRD 17073.

Decided Sept. 17, 1998.

*Brian Zwaig,* for plaintiff.

*Rita Marks* and *Robert Beck,* Legal Intern, for defendant.

ELINORE MARSH STORMER, Judge.

On July 8 1998, the defendant, Carol Little, was cited for driving under suspension. Little moves the court to suppress the evidence related to the citation and to dismiss the charge on the grounds that the investigation by the police officers constituted an illegal search and seizure.

Two Akron police officers, Wahl and Brown, were on routine patrol and noticed Little's car at approximately 1:40 a.m. as it pulled up and parked in front of an apartment building at 1153 Old South Main Street. The building has multiple units, some of which have been the site of drug arrests.

Little committed no traffic violation. She "hesitated" or waited in her car for a moment before exiting the vehicle and then "walked briskly" into the apartment building. Wahl testified that he believed that Little had seen the police and had hurried to where they could not get to her, which were, in his experience, common actions by someone who is engaged in illegal activity. Based on the time

of night, the fact that drug-related arrests had been made in the apartment building, and the fact that Little had waited in her car and then walked briskly into the building, Wahl and Brown investigated further. They were not concerned about drug activity but whether the car was stolen.

Officers Wahl and Brown approached Little's vehicle after she entered the building. They looked in the car to see whether anyone else was hiding in there, and checked the steering column to see whether it had been damaged in an effort to steal the vehicle. Nothing about the vehicle was suspicious or in violation of parking ordinances. Little then came out of the building and asked the officers if there was a problem. Officer Wahl told Little that he was not aware of anything wrong, since he had not received confirmation of anything yet. Wahl then asked Little for her driver's license, which she did not have. Wahl then requested Little's personal information and upon running it through the L.E.A.D.S. channel, discovered that Little's driver's license had been suspended.

The Fourth Amendment guarantees the right of the people to be secure from illegal searches and seizures. See *Terry v. Ohio* (1968), 392 U.S. 1, 7–9, 88 S.Ct. 1868, 1872–1873, 20 L.Ed.2d 889, 898. *Terry* held that searches and seizures as part of an investigation were justified when the police officer could point to specific and articulable facts that led him to conclude that such an intrusion was warranted. *Id.* at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906. The "high crime" nature of the neighborhood is one articulable fact which a police officer may consider. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 179, 524 N.E.2d 489, 491–492. The fact that a defendant is in a "high crime" area alone is insufficient to justify an investigatory stop. See *State v. Carter* (1994), 69 Ohio St.3d 57, 66, 630 N.E.2d 355, 362–363. The request for a driver's license is a seizure for the purposes of the Fourth Amendment. See *Delaware v. Prouse* (1979), 440 U.S. 648, 653, 99 S.Ct. 1391, 1395–1396, 59 L.Ed.2d 660, 667.

In *State v. Cole* (1994), 93 Ohio App.3d 712, 639 N.E.2d 859, the defendant had parked his car outside a building known for drug activity. He was leaning on his car, talking with a friend, when a police cruises entered the parking lot in which he was parked. He watched the police cruiser and then dropped something onto the ground. As the police parked next to the defendant's vehicle, they could see a razor blade and a rock of crack on the ground next to its tire. Based on these facts, the officers investigated and discovered more drugs and a firearm. Based on *Bobo*, the court held that Cole's suspicious movements, when considered with the total circumstances, justified the police investigation. *Cole*, 93 Ohio App.3d at 716, 639 N.E.2d at 861.

In *State v. Yelling* (Feb. 19, 1997), Summit App. No. 17674, unreported, 1997 WL 79973, the police were conducting surveillance of an apartment building known for its drug activity. Before the defendant arrived at the building, there

were many people milling about outside, appearing to be waiting for a drug delivery. The defendant entered the building with a bulge in his pocket, and after he left, all of the people that were outside went inside. The court held that the totality of the circumstances was sufficient to lead the police to believe that a drug delivery had been made. The court distinguished cases which held that the mere presence in a "high crime" area was insufficient to justify an investigatory stop, because of the presence of other "substantial indicators of criminal activity." *Id.*

The inference in light of these decisions seems to be that a "high crime" area, especially one notorious for drug activity, is a specific fact that the Ninth District believes strongly justifies an investigatory stop when the defendant engages in conduct that is even mildly suspicious. For example, in *Fairlawn v. Skoblar* (1997), 122 Ohio App.3d 464, 702 N.E.2d 127, the court upheld the suppression of evidence related to a traffic stop in a DUI case. There the defendant, who was young-looking, was observed late at night, pulling out of a cemetery which had previously reported possible devil worship activity. The court found that there were too few specific and articulable facts to justify the stop. However, the court stated, "[n]or was any evidence presented that would indicate that the location was considered a 'high crime area,' which might contribute to the totality of the circumstances in warranting an investigatory stop." *Id.* at 467, 702 N.E.2d at 129. This court reads the dicta of *Skoblar* to indicate that one's presence in a "high crime" area late at night reduces the number of other indicia necessary to justify an investigatory stop.

This case is distinguishable from *Cole* and *Yelling.* There was not the number of "substantial indicators of criminal activity" as there was in *Yelling*, nor is there the plain-view presence of drugs and paraphernalia that existed in *Cole.* The vehicle was not illegally parked, and the check of the vehicle revealed nothing suspicious. Nor were there any conditions that threatened the safety of the police officers, a substantial factor in the eyes of both the *Terry* and *Bobo* courts. See *Terry*, 392 U.S. at 22–24, 88 S.Ct. at 1880–1882, 20 L.Ed.2d at 907; *Bobo*, 37 Ohio St.3d at 179, 524 N.E.2d at 491–492.

In this case, Little parked in front of an apartment building in which an unspecified number of drug arrests had been made. However, not all of the apartments in the building at 1153 Old South Main Street are known to have been the site of arrests. The mere presence of the defendant in an area where crimes have occurred does not transform the neighborhood into a "high crime" area.

Little parked in front of an apartment building with some known drug activity. The other circumstances and facts are that she hesitated in her car and walked briskly into the building at 1:40 a.m. She had not committed a violation of any

type. Officer Wahl testified that Little's hesitation in getting out of the car and her brisk walk into the building were suspicious, indicating to him that she was trying to evade the police. Perhaps Little was just trying to get inside quickly because it was late at night. Perhaps her hesitation was merely making sure that she did not leave any valuables in the car. There are innocent explanations for these actions that prevent the conclusion that they are necessarily illegal. This case parallels *Skoblar* in its absence of sufficient specific and articulable facts justifying Wahl's detention and check of Little's driver's license.

When evidence obtained in an illegal stop would have inevitably been discovered by legal means, it may be presented to the court. See *State v. Perkins* (1985), 18 Ohio St.3d 193, 195–196, 18 OBR 259, 260–262, 480 N.E.2d 763, 765–767. In *State v. Harvey* (Feb. 2, 1994), Wayne App. No. 2819, unreported, 1994 WL 30491, the defendant was charged with driving under suspension. The Ninth District Court of Appeals found the stop to be illegal, but did not suppress the evidence of the license suspension because the officer had legally checked the license plates with the L.E.A.D.S. channel and would have inevitably discovered that the person to whom the car was registered had a suspended license. *Id.* This case does not fall within the inevitable discovery rule as applied in *Harvey*. The prosecution has not proven beyond a preponderance of the evidence that discovery of Little's license suspension by a check of her license plates was inevitable. The testimony is unclear as to whether the officers did in fact check Little's license plate with the L.E.A.D.S. channel, and therefore the prosecution has failed to meet its burden.

Ultimately, the court holds that the evidence shall be suppressed.

IT IS SO ORDERED.

*Motion to suppress granted.*