OPINION
{¶ 1} The State appeals from an order suppressing evidence that police seized from the purse of defendant-appellee Wanda Hawkins in the course of her arrest. The State contends that the encounter between Hawkins and the police was consensual. The State further argues that it was reasonable for the officer to retrieve the purse in order to provide for its safekeeping.
 {¶ 2} We conclude that the evidence does not support a conclusion that the purse was seized pursuant to a consensual encounter or that its search was necessary for purposes of inventory. Accordingly, the judgment of the trial court is affirmed.
 I {¶ 3} At the hearing on the motion to suppress, the State presented the testimony of Five Rivers Metro Parks Ranger, Bradley Pearson. Hawkins testified on her own behalf. She also presented the testimony of Berle Sullenbarger. The following facts are adduced from the transcript of that hearing.
 {¶ 4} In October of 2003, Officer Bradley Pearson was conducting his routine nightly patrol of the River Corridor Bikeway at Carrillon Boulevard. Pearson observed an automobile illegally parked on the roadside. The automobile was occupied by a male driver and a female passenger. Pearson approached the vehicle and requested the driver's operator's license and vehicle registration. The driver, Berle Sullenbarger, produced both.
 {¶ 5} Although Pearson only intended to issue a parking ticket to the driver, he also asked for the identification of the passenger. The woman, who claimed to have no identification documents, told Pearson that her name was Pamela Hawkins. She also gave him a social security number.
 {¶ 6} Pearson returned to his cruiser to check the information provided by Hawkins and Sullenbarger. Pearson verified the name and registration of Sullenbarger, but was unable to verify the name and social security number of Hawkins. Pearson returned to the vehicle to double-check the information provided by the woman. She again told him that her name was Pamela Hawkins; however, she provided a social security number that differed from the first. Pearson again returned to his cruiser, while still holding Sullenbarger's license, to check the identification information. He found that the social security number provided by Hawkins belonged to a man from Cleveland. Pearson began to suspect that the woman was trying to hide her identity.
 {¶ 7} Pearson then asked Hawkins to sit in the back of his cruiser while he verified her identity. At that point, Sullenbarger informed Pearson that the woman's real name was Wanda Hawkins. Pearson then found an outstanding warrant for Hawkins's arrest.
 {¶ 8} Pearson took Hawkins into custody and asked her whether she had a purse or any personal belongings. According to Pearson, Hawkins stated that she would like to have her purse. Hawkins testified that because she knew what was in the purse, and did not want it going to jail with her, she did not ask Pearson to retrieve the purse. In any event, Pearson took possession of the purse and began a search of its contents. The purse contained drug paraphernalia and a tan, grayish powder.
 {¶ 9} Hawkins was indicted for possession of heroin. She filed a motion to suppress the evidence obtained as a result of the search of her purse. Following a hearing, the trial court sustained the motion. The State now appeals, pursuant to Crim.R. 12(J).
 II {¶ 10} The State's sole assignment of error is as follows:
 {¶ 11} "The trial court erred in sustaining defendant's motion to suppress."
 {¶ 12} The State contends that the trial court's decision to suppress the evidence is erroneous. In support, the State argues that the encounter between Pearson and Hawkins was consensual. The State further argues that the purse was validly searched incident to arrest.
 {¶ 13} In considering a motion to suppress, the trial court assumes the role of the trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of the witnesses.State v. Mills (1992), 62 Ohio St.3d 357, 366. "Accordingly, in our review, we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence." State v. Guysinger
(1993), 86 Ohio App.3d 592, 594, citation omitted. However, we must independently determine whether the trial court's conclusions of law, based on those findings of fact, are correct. Id., citations omitted.
 {¶ 14} We begin with the issue of whether the search was part of a consensual encounter. "Encounters are consensual where the police merely approach a person in a public place, engage the person in conversation, request information, and the person is free not to answer and walk away."State v. Hardin, Montgomery App. No. 20305, 2005-Ohio-130, ¶ 14. "The request to examine one's identification does not make an encounter nonconsensual." Id. "Nor does the request to search a person's belongings." Id. "The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter." Id. "Once a person's liberty has been restrained, the encounter loses its consensual nature * * *." Id., citation omitted.
 {¶ 15} While the traffic violation gave Pearson authority to stop Sullenbarger and run a license check, it did not, without more, give him authority to expand his investigation. Indeed, in order to expand the scope of the investigation, Pearson would be required to provide articulable facts indicating that criminal activity was occurring. Statev. Chatton (1984), 11 Ohio St.3d 59, 463 N.E.2nd 1237. Without additional probable cause, Pearson could not detain Sullenbarger and Hawkins longer than necessary to issue a citation. State v. Bell (September 20, 2001), Franklin App. No. 01AP-7.
 {¶ 16} According to Pearson, he decided not to cite Sullenbarger after verifying his identification. Therefore, in order to prolong the stop, Pearson needed an articulable reason to suspect Hawkins of a crime. It is obvious that Pearson believed Hawkins was engaged in some sort of illicit activity. However, there are no facts in this record to establish the existence of a reasonable suspicion, as opposed to a mere hunch, that Hawkins was involved in criminal activity or subject to an outstanding warrant. Pearson also claims that he began to think that Hawkins was giving him false names in order to avoid being arrested on an outstanding warrant. While this suspicion turned out to be correct, the record does not support this as a reasonable suspicion at the time Pearson decided not to cite Sullenbarger.
 {¶ 17} Moreover, while Pearson was checking on Hawkins's identity, he retained Sullenbarger's driver's license. This meant that Sullenbarger was not free to drive away, and, even if the encounter began consensually, it is clear that Sullenbarger and his passenger were being detained while Pearson kept Sullenbarger's driver's license.
 {¶ 18} We conclude that the trial court correctly determined that this stop was not consensual.
 {¶ 19} We next turn to the State's claim that Hawkins's purse was searched incident to a lawful arrest. The State relies upon our holding in State v. Sincell, Montgomery App. No. 19073, 2002-Ohio-1783 to support this argument. In Sincell we held that a police officer's retrieval of a suspected prostitute's purse from a client's vehicle was reasonable given that "there was no reason to believe that the [client] * * * knew [the defendant], so that the purse would presumably have been lost to [defendant] had it not been retrieved." We further held that although the officer's warrantless search of the purse was improper, its illegal contents would have been inevitably discovered upon inventory at the jail. Id.
 {¶ 20} The facts of this case are distinguishable from those inSincell. Although Pearson testified that Hawkins stated that she would like to have her purse, he concedes that he did not make a note of this request in his police report. Hawkins testified that she did not request the purse. In the absence of an express finding of credibility, we must presume that the trial court, which found that the search was not consensual, found Hawkins to be the more credible witness on this point.
 {¶ 21} Furthermore, there is evidence in this record that Sullenbarger and Hawkins were acquaintances, and in the absence of a specific request to retrieve the purse, we cannot say that it was reasonable for Pearson to take possession of the purse.
 {¶ 22} We conclude that the record supports the trial court's decision to suppress the evidence stemming from the search of Hawkins' purse. Accordingly, the State's sole assignment of error is overruled.
 III {¶ 23} The State's sole assignment of error having been overruled, the judgment of the trial court is affirmed.
Brogan, P.J., and Young, J., concur.
(Hon. Frederick N. Young, Retired from the Court of Appeals, Second Appellate District Sitting by Assignment of the Chief Justice of the Supreme Court of Ohio)