[Cite as *State v. Polk*, 2011-Ohio-4598.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | Hon.  Sheila G. Farmer, P.J. |
| Plaintiff - Appellee | : | Hon.  John W. Wise, J. |
| | : | Hon.  Julie A. Edwards, J. |
| -vs- | : | |
| | : | |
| TYRIN POLK | : | Case No. 11CAA010006 |
| | : | |
| Defendant - Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:    Appeal from the Court of Common Pleas,
Case No. 10CRI060309


JUDGMENT:    Affirmed


DATE OF JUDGMENT:    September 12, 2011


APPEARANCES:

For Plaintiff-Appellee                     For Defendant-Appellant

GREGORY A. TAPOCSI                  W. MARTIN MIDIAN
140 North Sandusky Street            133 East Livingstone Avenue
3rd Floor                                      Columbus, OH  43215
Delaware, OH  43015

*Farmer, P.J.*

{¶1}   On March 9, 2010, Ohio State Highway Patrol Trooper Darrell Dowler observed appellant, Tyrin Polk, following another vehicle too closely and cross over the white fog line.  Trooper Dowler effectuated a traffic stop.  Following an investigation, marijuana was discovered in appellant's vehicle.

{¶2}   On June 4, 2010, the Delaware County Grand Jury indicted appellant on one count of trafficking in marijuana in violation of R.C. 2925.03 and one count of possession of marijuana in violation of R.C. 2925.11.

{¶3}   On July 19, 2010, appellant filed a motion to suppress, challenging the stop and claiming it was unconstitutionally too long.  Hearings were held on August 4, and September 24, 2010.  By judgment entry filed September 30, 2010, the trial court denied the motion.

{¶4}   A jury trial commenced on November 9, 2010.  The jury found appellant guilty as charged.  By judgment entry of sentence filed December 29, 2010, the trial court merged the two counts and sentenced appellant to a term of sixteen months in prison.

{¶5}   Appellant filed an appeal and this matter is now before this court for consideration.  Assignment of error is as follows:

I

{¶6}   "THE TRIAL COURT ERRED IN FAILING TO SUPPRESS EVIDENCE TAKEN IN AN UNLAWFUL SEIZURE.  THE DECISION VIOLATED TYRIN POLK'S RIGHTS UNDER THE FOURTH AND FOURTEENTH AMENDMENTS TO THE

UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 14 OF THE OHIO CONSTITUTION."

I

{¶7}   Appellant claims the trial court erred in denying his motion to suppress. We disagree.

{¶8}   There are three methods of challenging on appeal a trial court's ruling on a motion to suppress.  First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence.  *State v. Fanning* (1982), 1 Ohio St.3d 19; *State v. Klein* (1991), 73 Ohio App.3d 485; *State v. Guysinger* (1993), 86 Ohio App.3d 592.  Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact.  In that case, an appellate court can reverse the trial court for committing an error of law.  *State v. Williams* (1993), 86 Ohio App.3d 37.  Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress.  When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry* (1994), 95 Ohio App.3d 93; *State v. Claytor* (1993), 85 Ohio App.3d 623; *Guysinger*.  As the United States Supreme Court held in *Ornelas v. U.S.* (1996), 116 S.Ct. 1657, 1663, "…as a general matter determinations of reasonable suspicion and probable cause should be reviewed *de novo* on appeal."

{¶9} Although appellant concedes Trooper Dowler had reasons to stop him, he argues his thirteen minute detention until a canine unit arrived and alerted was not based on any specific and articulable facts of criminal activity.

{¶10} In *Terry v. Ohio* (1968), 392 U.S. 1, 22, the United States Supreme Court determined that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possible criminal behavior even though there is no probable cause to make an arrest." However, for the propriety of a brief investigatory stop pursuant to *Terry*, the police officer involved "must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. at 21. Such an investigatory stop "must be viewed in the light of the totality of the surrounding circumstances" presented to the police officer. *State v. Freeman* (1980), 64 Ohio St.2d 291, paragraph one of the syllabus.

{¶11} An investigative detention "must be temporary and last no longer than is necessary to effectuate the purpose of the stop. Similarly, the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Florida v. Royer* (1983), 460 U.S. 491, 500. "The lawfulness of the initial stop will not support a 'fishing expedition' for evidence of crime." *State v. Smotherman* (July 29, 1994), Wood App. No. 93WD082." As explained by our brethren from the Sixth District in *State v. Gonyou* (1995), 108 Ohio App.3d 369, 372:

{¶12} "Various activities, including following a script, prolonging a traffic stop in order to 'fish' for evidence, separating an individual from his car and engaging in 'casual

conversation' in order to observe 'body language' and 'nervousness,' have been deemed (depending on the overall facts of the case) to be manipulative practices which are beyond the scope of 'the fulfillment of the purpose for which the stop was made.' *State v. Correa* (1995), 108 Ohio App.3d 362, 368, 670 N.E.2d 1035, 1039; see, also, *State v. Smotherman, supra.*"

{¶13} "However, if circumstances attending an otherwise proper stop should give rise to a reasonable suspicion of some other illegal activity, different from the suspected illegal activity that triggered the stop, then the vehicle and the driver may be detained for as long as that new articulable and reasonable suspicion continues, even if the officer is satisfied that the suspicion that justified the stop initially has dissipated." *State v. Myers* (1990), 63 Ohio App.3d 765, 771.

{¶14} In its judgment entry filed September 30, 2010, the trial court denied appellant's motion to suppress, finding the following:

{¶15} "The duration of the stop from the time of stop until the arrival of the K-9 unit was 13 minutes. This is not an unreasonable period of time and there is no evidence the length of stop was prolonged in any significant manner. Therefore no constitutional violation occurred such that the results of the search should be suppressed."

{¶16} The trial court's conclusion on the thirteen minute stop was based on the following findings:

{¶17} "The officer testified that he saw that both the driver and the passenger were nervous. The passenger's hands were shaking. He noted air freshener aroma in the car. Once he ran the license, he talked with the driver in the cruiser and then the

passenger who remained in the car. They gave inconsistent stories about where they were going and how long they would be staying."

{¶18} No one contests these facts, but appellant argues they were insufficient to serve as the basis for the prolonged detention. In support of his argument, appellant cites the case of *State v. Robinette,* 80 Ohio St.3d 234, 1997-Ohio-343, paragraph one of the syllabus, wherein the Supreme Court of Ohio held the following:

{¶19} "When a police officer's objective justification to continue detention of a person stopped for a traffic violation for the purpose of searching the person's vehicle is not related to the purpose of the original stop, and when that continued detention is not based on any articulable facts giving rise to a suspicion of some illegal activity justifying an extension of the detention, the continued detention to conduct a search constitutes an illegal seizure.***"

{¶20} Ten years later in *State v. Batchili,* 113 Ohio St.3d 403, 2007-Ohio-2204, paragraph two of the syllabus, the Supreme Court of Ohio held, "[t]he 'reasonable and articulable' standard applied to a prolonged traffic stop encompasses the totality of the circumstances, and a court may not evaluate in isolation each articulated reason for the stop." In the *Batchili* case, the stop at issue lasted eight minutes and twenty-five seconds until the canine unit arrived and alerted. There was no indication that the stop was delayed for the arrival of the canine unit, as the officer was awaiting word on the computer check of the driver's license, registration, and license plate:

{¶21} "There simply is no evidence to suggest that Batchili's detention for the traffic violation was of sufficient length to make it constitutionally dubious. A traffic stop is not unconstitutionally prolonged when permissible background checks have been

diligently undertaken and not yet completed at the time a drug dog alerts on the vehicle. There is no showing that the detention was delayed so that the dog could conduct its search, and therefore, there was no constitutional violation.

{¶22} "Moreover, assuming the detention *was* actually prolonged by the request for a dog search, 'the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop. *State v. Myers* (1990), 63 Ohio App.3d 765, 771 [580 N.E.2d 61]; *State v. Venham* [1994], 96 Ohio App.3d [649,] 655 [645 N.E.2d 831].' *Howard,* 2006-Ohio-5656, 2006 WL 3059799, at ¶16." *Batchili* at ¶14-15.

{¶23} Some of the factors enumerated in *Batchili* which were deemed to be sufficient for a prolonged stop were similar to those sub judice (nervous interaction, conflicting statements, shaking hands, smell of deodorizer). When Trooper Dowler initiated the stop of appellant, he noticed appellant was overly nervous, his hands were shaking, and there were air fresheners in the vehicle along with air freshener spray. T. at 19. The passenger was also extremely nervous and his hands were shaking. Id. Trooper Dowler asked appellant to exit the vehicle, patted him down for weapons, and placed him in the rear of the cruiser. T. at 21. Appellant informed Trooper Dowler that he had a pocket knife on his person which Trooper Dowler secured. Id. Trooper Dowler testified that he often has a driver come to the cruiser, especially "when I feel that there's something else that needs attention. Like in this example, the front seat passenger being overly nervous and the driver being overly nervous." T. at 20.

{¶24} Once inside the cruiser, Trooper Dowler ran appellant's license which could take between seven to ten minutes. T. at 22-23. Trooper Dowler asked appellant where he was going and appellant responded they were going to Akron to visit a friend and would be returning that same day. T. at 23-24. While he was awaiting word on appellant's license, Trooper Dowler went to obtain the passenger's information. T. at 23. The passenger was still nervous and told Trooper Dowler they were going to Akron for a funeral and were going to spend the night. T. at 23-24. This alerted the trooper because there were no overnight bags in the vehicle for an overnight stay as mentioned by the passenger, and the story did not match appellant's. Id. Thereafter, Trooper Dowler called for the canine unit. T. at 24.

{¶25} As in *Batchili,* circumstances were presented in this case that led Trooper Dowler to suspect drug activity. Although each fact taken separately is not evidence of drug activity, the resulting effect of the cumulative facts substantiates reasonable suspicion of criminal activity. The use of air fresheners to cover the smell of marijuana, coupled with extreme and visible nervousness of the vehicle's occupants, as well as the conflicting stories, were collectively sufficient to establish reasonable suspicion.

{¶26} Upon review, we find the trial court did not err in denying the motion to suppress.

{¶27} The sole assignment of error is denied.

{¶28}  The judgment of the Court of Common Pleas of Delaware County, Ohio is hereby affirmed.

By Farmer, P.J.

Wise, J. and

Edwards, J. concur.

_s/ Sheila G. Farmer_____

_s/ John W. Wise_____

_s/ Julie A. Edwards_____

JUDGES

SGF/sg823

IN THE COURT OF APPEALS FOR DELAWARE COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee | : | |
| -vs- | : | JUDGMENT ENTRY |
| TYRIN POLK | : | |
| Defendant-Appellant | : | CASE NO. 11CAA010006 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas of Delaware County, Ohio is affirmed. Costs to appellant.

_s/ Sheila G. Farmer_____

_s/ John W. Wise_____

_s/ Julie A. Edwards_____

JUDGES