[Cite as *State v. Floyd*, 2012-Ohio-990.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

RICKY G. FLOYD

    Appellant

C.A. No.     11CA010033

APPEAL FROM JUDGMENT
ENTERED IN THE
ELYRIA MUNICIPAL COURT
COUNTY OF LORAIN, OHIO
CASE No.    2010TRC06716

DECISION AND JOURNAL ENTRY

Dated: March 12, 2012

DICKINSON, Judge.

INTRODUCTION

{¶1}    Officer Fred Merrill, a 16-year veteran of the Elyria Police Department, was on patrol one evening around 11:50 p.m. when he saw the truck in front of him turn into a driveway and drive behind a building. Officer Merrill thought that the behavior was suspicious because the business that occupied the building was closed for the day and there had been a number of break-ins in the area. He parked his cruiser across the street from the business and called for back-up because he did not want to approach the building alone if there was a burglary in progress. About two minutes later, he saw the truck drive back out from behind the building. Once the truck reentered the road, he initiated a traffic stop. He discovered that the truck was being driven by Ricky Floyd, who had given the owner of the business a ride back to it after they had socialized at a pool hall. According to Officer Merrill, Mr. Floyd was noticeably intoxicated. Mr. Floyd subsequently failed field sobriety and blood-alcohol concentration tests

and was cited for operating a vehicle under the influence of alcohol and operating a vehicle with a prohibited blood-alcohol concentration. Mr. Floyd moved to suppress the evidence against him, arguing that Officer Merrill did not have reasonable suspicion to initiate a traffic stop. After the municipal court overruled his motion, Mr. Floyd pleaded no contest, and the court found him guilty of the blood-alcohol concentration offense. He has appealed his conviction, arguing that the municipal court incorrectly overruled his motion to suppress. We affirm because, under the totality of the circumstances, Officer Merrill had reasonable suspicion to conduct an investigatory stop.

## STANDARD OF REVIEW

{¶2} Mr. Floyd's assignment of error is that the municipal court incorrectly overruled his motion to suppress. A motion to suppress evidence presents a mixed question of law and fact. *State v. Burnside*, 100 Ohio St. 3d 152, 2003-Ohio-5372, at ¶8. Generally, a reviewing court "must accept the trial court's findings of fact if they are supported by competent, credible evidence." *Id. But see State v. Metcalf*, 9th Dist. No. 23600, 2007-Ohio-4001, at ¶14 (Dickinson, J., concurring). The reviewing court "must then independently determine, without deference to the conclusion of the trial court, whether the facts satisfy the applicable legal standard." *Burnside*, 2003-Ohio-5372, at ¶8. Mr. Floyd has only challenged whether Officer Merrill had reasonable suspicion to initiate a traffic stop.

## REASONABLE SUSPICION

{¶3} Although a police officer generally may not seize a person within the meaning of the Fourth Amendment unless he has probable cause to arrest him for a crime, "not all seizures of the person must be justified by probable cause . . . ." *Florida v. Royer*, 460 U.S. 491, 498 (1983). "A police officer may stop a car if he has a reasonable, articulable suspicion that a

person in the car is or has engaged in criminal activity." *State v. Kodman*, 9th Dist. No. 06CA0100-M, 2007-Ohio-5605, at ¶3 (citing *State v. VanScoder*, 92 Ohio App. 3d 853, 855 (1994)). "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Stanley*, 11th Dist. No. 2007-P-0104, 2008-Ohio-3258, at ¶18 (citing *United States v. Hickman*, 523 F. 2d 323, 327 (9th Cir. 1975)). Before initiating such a stop, a "police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "[I]t is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Id.* at 21-22 (quoting *Carroll v. United States*, 267 U.S. 132, 162 (1925)).

{¶4} Whether a police officer had "an objective and particularized suspicion that criminal activity was afoot must be based on the entire picture – a totality of the surrounding circumstances." *State v. Andrews*, 57 Ohio St. 3d 86, 87 (1991) (citing *United States v. Cortez*, 449 U.S. 411, 417-18 (1981); *State v. Bobo*, 37 Ohio St. 3d 177 (1988)). "[The] circumstances are to be viewed through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." *Id.* at 87-88. "A court reviewing the officer's actions must give due weight to his experience and training and view the evidence as it would be understood by those in law enforcement." *Id.* at 88.

{¶5} "[A]n officer's reliance on a mere 'hunch' is insufficient to justify a stop[.]" *United States v. Arvizu*, 534 U.S. 266, 274 (2002) (quoting *Terry v. Ohio*, 392 U.S. 1, 27 (1968)). Although "[t]he reputation of an area for criminal activity is an articulable fact upon which a police officer may legitimately rely in determining whether an investigative stop is warranted[,]"

a person's mere presence in a high crime area is insufficient to justify an investigatory stop. *State v. Bobo*, 37 Ohio St. 3d 177, 179 (1988) (quoting *United States v. Magda*, 547 F.2d 756, 758 (2d Cir. 1976)); *Brown v. Texas*, 443 U.S. 47, 52 (1979); *State v. Carter*, 69 Ohio St. 3d 57, 62 (1994).

{¶6} Both parties have cited several cases that, they have argued, are similar to this one. As is often true in these cases, each case presents unique facts that thwart an apples to apples comparison with others. Nevertheless, comparison with other cases can be useful. In *State v. Klein*, 73 Ohio App. 3d 486 (4th Dist. 1991), a police officer saw a car sitting in a car dealership lot at 1:35 a.m. The officer decided to investigate because "there had been a continual problem in the summer and fall of 1989 with people tearing up cars and stealing items from cars in the area of the car lots." *Id*. at 488. When the officer approached the car, it pulled out of the lot, so the officer initiated a traffic stop. The facts that the State relied on to justify the stop were "(1) the area in which appellant was observed had experienced a problem with vandalism and theft; (2) the area in which appellant was observed was private property; (3) the time of the observation was 1:35 a.m.; and (4) appellant turned out of the area as [the officer's] police cruiser approached the area." *Id*. at 489. The Fourth District concluded, however, that, under the totality of the circumstances, the officer did not have reasonable suspicion to stop the car, noting that the facts were "equally consistent with innocent behavior." *Id*.

{¶7} In *State v. Rhude*, 91 Ohio App. 3d 623 (12th Dist. 1993), a sheriff's deputy on patrol at 1:30 a.m. saw a car drive down a lane, turn around, and drive back out to the road. The car then drove two-tenths of a mile down the road and pulled into another driveway. The car did not violate any traffic laws, but the deputy decided to stop it because "police had received many complaints concerning prowlers and burglaries in the area . . . ." *Id*. at 625. The Twelfth District

determined that the deputy did not have reasonable suspicion, concluding that "[t]he fact that a person pulls out of one driveway and into another a short distance down the road in an area where several burglaries had been reported is not sufficient to constitute reasonable suspicion . . . ." *Id*. at 626.

{¶8}    In *State v. Hooper*, 5th Dist. No. 94CA07020, 1994 WL 728340 (Dec. 23, 1994), an officer decided to follow a car at 3:45 a.m. to see if the driver was drunk because "there wasn't a lot happening." *Id*. at *1. As he turned onto the street, he lost sight of the car, but then noticed it parked behind a textile services store. He then saw the car pull into the parking lot of a fast food restaurant, where he approached the driver. According to the officer, there had been "several break-ins in the area in the past, and he thought that [the driver] might be involved in a break-in at [the textile services store]." *Id*. The Fifth District concluded that the officer did not have reasonable suspicion to detain the driver because "[h]e observed no moving violations[,] [h]e observed no conduct behind [the store] to support a belief that [the driver] was involved in a break-in[,] [h]e had no knowledge that [the driver] was involved in any type of illegal activity[,] [and] [h]e observed nothing about the store to indicate that there had been a break-in recently." *Id*.

{¶9}    In *State v. Brown*, 116 Ohio App. 3d 477 (7th Dist. 1996), a sheriff's deputy saw a car with its headlights on blocking the entrance of a truck dealership at 2:58 a.m. The officer saw three people inside the car and decided to initiate a traffic stop because there had been prior thefts at the dealership. The Seventh District concluded that the car's conduct was not indicative of criminal behavior, noting that it was "not observed in motion" and no one "was observed outside the vehicle or engaged in any type of activity that would lead to a reasonable suspicion that criminal activity was about to take place." *Id*. at 481.

{¶10} In *City of Fairlawn v. Skoblar*, 122 Ohio App. 3d 464 (9th Dist. 1997), a police officer noticed a car exiting a cemetery around midnight. The officer was aware of previous complaints of devil worship at the cemetery that involved cars entering the cemetery late at night and leaving colored candles at various grave sites. Although the officer did not notice anything irregular about the driver's operation of the car, she stopped it to investigate the possibility of criminal activity. The trial court granted the driver's motion to suppress, and this Court affirmed, noting that the cemetery was open at the time of the stop, there was no evidence that the cemetery was in a high crime area, and the alleged prior acts of devil worship would not even constitute the offense of criminal mischief. *Id.* at 467-68.

{¶11} In *State v. Gray*, 11th Dist. No. 99-G-2249, 2000 WL 973411 (July 14, 2000), an officer with seven years of experience saw a car drive behind a gas station that was at the corner of an intersection and was closed for the night. Although the officer did not observe any traffic violations, he stopped the car to "find out what the driver was doing behind the business." *Id.* at *1. The Eleventh District concluded that the officer did not have reasonable suspicion to stop the car, noting that it was not a high-crime area, there had not been any break-ins in the neighborhood, the gas station was located at the intersection of two roads, the car did not stop or slow down as it was passing behind the building, and there were no signs limiting right of access at night. *Id.* at *4-5.

{¶12} In *State v. Richardson*, 9th Dist. No. 21144, 2003-Ohio-246, a police officer on patrol around 2:30 a.m. saw a truck parked behind a closed restaurant. As the officer approached the truck, it drove away at a "higher than normal" rate of speed. *Id.* at ¶2. According to the officer, there were many businesses in the area, but none of them was open at that time of night. It was also a very high crime area. This Court concluded that the trial court correctly determined

that the officer had a reasonable and articulable suspicion that the driver of the truck was engaged in criminal activity. *Id*. at ¶12.

**{¶13}** In *State v. Cowan*, 6th Dist. No. WD-05-090, 2006-Ohio-6177, a university police officer was patrolling the grounds of Bowling Green State University around 4:30 a.m. when he saw a car enter an empty parking lot reserved for daytime parking for commuter students and travel toward the dead-end part of the lot. There was no overnight parking allowed in the lot, and the building that the lot was next to was closed and does not conduct any business at night. The officer stopped the car because he "believed there was no legitimate reason for anyone to be in that location at that time of night." *Id*. at ¶5. The Sixth District concluded that, under the totality of the circumstances, "an inference that criminal activity may be afoot was reasonable." *Id*. at ¶13.

**{¶14}** In *City of Cuyahoga Falls v. Pollack*, 9th Dist. No. 23988, 2008-Ohio-2024, an officer noticed a truck stopped at an intersection two car lengths behind the stop bar. The officer began following the truck from a distance and, at one point, lost sight of it. When the officer saw the truck again, it was being driven behind some closed buildings with its headlights off. It was about 3:00 a.m. This Court concluded that the officer had reasonable suspicion to stop the truck, noting that, "[w]hile there may be some lawful reason for someone to be behind a closed commercial building in a truck with extinguished lights late at night, it requires [some] exertion to conceive of such a reason." *Id.* at ¶7 (quoting *State v. Rhines*, 9th Dist. No. 16548, 1994 WL 431413 at *2 (Aug. 10, 1994)).

**{¶15}** The case with facts closest to this one is *State v. Howard*, 6th Dist. No. L-92-261, 1993 WL 93503 (Mar. 31, 1993). According to the Sixth District, the facts of that case were that, "[o]n Sunday, April 26, 1992, at approximately 10:00 p.m., a Sylvania police officer by the

name of William Ahleman was on routine patrol. Officer Ahleman observed a pickup truck exit a main thoroughfare into the driveway of a closed commercial building. The pickup truck extinguished its headlights and proceeded to the rear of the building. Ahleman, a fifteen-year police veteran, later testified that because this activity aroused his suspicion he called by radio for backup and turned his own car onto the driveway of an adjacent cemetery. Ahleman's intention was to observe the activities of the driver of the pickup truck behind the building. In so doing, [he] temporarily lost sight of the truck. When Officer Ahleman next saw the truck, it was emerging from the rear of the building. At this point, Officer Philip Gallup arrived in a backup unit. Officer Gallup saw the truck leave the private driveway and enter the main street. He followed the pickup truck for a few blocks, then stopped it as it was entering a highway access ramp. While Officer Gallup was stopping the pickup, Officer Ahleman was driving his vehicle to inspect the back of the commercial building." *Id*. at *1. The Sixth District concluded that, under those facts, the officers "not only had cause to conduct an investigatory stop but might have been derelict had they not done so." *Id*. at *3.

{¶16} In this case, Officer Merrill, who had 16 years of experience with the City of Elyria, saw a truck turn into the driveway of a business and drive behind, what appeared to him to be, a closed commercial building. It was close to midnight and the building was in an area in which there had been recent break-ins. While the gentleman who owned the business testified that the front of his building contains an apartment unit, there is no evidence in the record that indicates that Officer Merrill knew or should have known that part of the building is an apartment unit. Furthermore, while there was testimony that there are houses and other apartments in the vicinity of the building, there was no testimony that the driveway Mr. Floyd turned into leads to any of those houses or apartment units.

{¶17} The main difference between this case and *Howard* is that the defendant in *Howard* turned his headlights off before driving behind the building. While that act made the defendant's conduct in that case more suspicious than Mr. Floyd's, the fact that Mr. Floyd had his headlights on does not mean that his otherwise similar acts did not also provide reasonable suspicion that criminal activity was afoot.

{¶18} Mr. Floyd has argued that his actions were consistent with innocent behavior. We agree that it may have occurred to someone watching his truck that it was simply the owner of the business going in late to catch-up on unfinished work. The possibility of an innocent explanation, however, does not deprive an officer of the capacity to entertain a reasonable suspicion of criminal conduct. *State v. Elliott*, 4th Dist. No. 98CA613, 1999 WL 355175 at *3 (May 20, 1999). The relevant inquiry in determining whether reasonable suspicion exists "is not whether particular conduct is 'innocent' or 'guilty,' but the degree of suspicion that attaches to particular types of non-criminal acts." *Id*. (quoting *Illinois v. Gates*, 462 U.S. 213, 243-44 (1983)).

{¶19} Another issue that this Court must consider is whether the brevity of Mr. Floyd's stay behind the buildings lessens the suspiciousness of his conduct. In *Howard*, the Sixth District did not indicate how long the defendant was behind the building. Its opinion simply notes that the officer "temporarily" lost sight of the truck. *State v. Howard*, 6th Dist. No. L-92-261, 1993 WL 93503 at *1 (Mar. 31, 1993). In this case, Officer Merrill testified that, after he turned his cruiser around and got into position across the street from the building, it was another two minutes before the truck came out from behind the building.

{¶20} Two minutes would not have given a thief much time to break into the business, but the driver of the truck could simply have been in the process of casing buildings in the area

or have quickly loaded something that was behind the building into the bed of his truck. Accordingly, although this case presents a close question, based on the time of day, Officer Merrill's experience, the fact that the businesses to which the driveway led were closed, and the fact that there had been "numerous break-ins . . . burglaries and all kind of crimes committed specifically in that area," we conclude that, viewing the evidence "as it would be understood by those in law enforcement," the totality of the circumstances supports the municipal court's determination that Officer Merrill had reasonable and articulable suspicion to justify stopping Mr. Floyd's truck. *State v. Andrews*, 57 Ohio St. 3d 86, 88 (1991). Mr. Floyd's assignment of error is overruled.

## CONCLUSION

**{¶21}** The municipal court correctly overruled Mr. Floyd's motion to suppress. The judgment of the Elyria Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Elyria Municipal Court, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is

instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
CLAIR E. DICKINSON
FOR THE COURT

WHITMORE, P. J.
CARR, J.
CONCUR.

APPEARANCES:

SAMIR HADEED, Attorney at Law, for Appellant.

CYNTHIA M. ADAMS, Prosecuting Attorney, for Appellee.