[Cite as *State v. Browning*, 2012-Ohio-4026.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No.      26143 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| BRET BROWNING | BARBERON MUNICIPAL COURT COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No.      11 TRC 1290 |

DECISION AND JOURNAL ENTRY

Dated: September 5, 2012

MOORE, Judge.

{¶1}   Defendant-Appellant, Bret Browning, appeals from the September 13, 2011 judgment entry of the Barberton Municipal Court denying his motion to suppress. For the following reasons, we reverse.

I.

{¶2}   On March 19, 2011, at approximately 12:30 a.m., Copley Township Patrol Officer Ryan Price observed a car parked on Copley Road in a private drive with a man standing beside it. Officer Price testified that this "[k]ind of caught [his] attention;" so he put his patrol car in reverse and "backed on up to get a better look." At this time, Officer Price noticed that the car had an out of state license plate and observed Mr. Browning get into the car and proceed down the private drive.

{¶3}   Officer Price testified:

I didn't know if the person was taking a leak. If they were checking the mail.
Getting the trash cans. Stopped because they were lost. Being it was an out-of-

state plate, pulled in there to check direction or what, but when he got in the car and drove to the back—I know it's a dead end, so I figured, well, if they're legit, maybe they'll turn around and come back. So I went down the road a little bit, sat in my cruiser, and sure enough the car came back out, got on State Route 21, went southbound.

Further, Officer Price testified "[a]s the car was getting on State Route 21 southbound I followed him behind, turned on my overhead lights and pulled it over."

{¶4} Upon approaching Mr. Browning's car, Officer Price noticed "right away that his appearance just wasn't right." He described Mr. Browning's appearance and actions as follows:

I noticed that his eyes were glassy. The white parts were red. His pupils were dilated. When I started talking to him, he kind of had a mumblish kind of slurrish type tone to his voice. Asked him if he had been drinking. He stated no. * * * I said, "[y]ou're telling me you've had no alcoholic beverage drink whatsoever? Not even one?" He stated no.

He also smelled a "moderate to strong" odor of alcohol.

{¶5} Officer Price repeatedly asked Mr. Browning to step out of the car in order to perform field sobriety tests, but he refused to do so. Mr. Browning's refusal caused Officer Price to call for back-up. Officer Shindy arrived and assisted Officer Price with physically removing him from the car.

{¶6} At approximately 12:43 a.m., Officer Price placed Mr. Browning under arrest and issued him a citation for operating a vehicle while under the influence of alcohol ("OVI"), in violation of R.C. 4511.19(A)(1)(a). The citation was filed in Barberton Municipal Court, and Mr. Browning entered a plea of not guilty.

{¶7} Mr. Browning filed a motion to suppress challenging the constitutionality of the traffic stop. In his motion, Mr. Browning argued that (1) Officer Price did not have a reasonable suspicion to perform the traffic stop, and (2) Officer Price did not have probable cause to arrest him for OVI.

{¶8} The trial court held a hearing on his motion to suppress. On September 13, 2011, the trial court journalized a judgment entry denying Browning's motion to suppress. In its judgment entry, the trial court stated:

> [Officer Price] testified that (about 12:40 AM), he drove past a vehicle parked at the entrance to a private drive and observed a person standing beside the car. He then stopped and backed up, at which time a person looked at him and then got in the car and proceeded up the drive. [Officer Price] stated he noticed the vehicle had out of state license plates and decided to wait to see what the person was up to because there were only 3 homes on that drive and there have been numerous break-ins around the area.
>
> After turning around and parking, [Officer Price] observed [Mr. Browning] about 3 minutes later pulling back out of the drive. *He then decided to affect a traffic stop to see what [Mr. Browning] was up to.*
>
> * * *
>
> When looking at the totality of the circumstances, upon seeing an out of state vehicle in a private drive at 12:30 AM where the driver is out of the vehicle but jumps back in upon seeing [Officer Price], pulls up the drive and then comes back out a few minutes later, could lead an officer to reasonably believe criminal activity may be afoot. The circumstances surrounding [Officer Price's] observations of [Mr. Browning], red, watery eyes, mumbled speech, fumbling for identification, and moderate to strong odor of alcoholic beverage, coupled with [Mr. Browning's] refusal to exit the vehicle, does arise to probable cause to arrest.

(Emphasis added.)

{¶9} Mr. Browning changed his plea to no contest as to OVI in violation of R.C. 4511.19(A)(1)(a).

{¶10} The trial court found him guilty and sentenced him to a fine, license suspension, limited driving privileges with restrictive plates, and 180 days in jail with 177 days suspended. In lieu of jail time, the trial court ordered Browning to serve 3 days in a state approved residential alcohol program.

{¶11} Mr. Browning filed a timely notice of appeal, setting forth one assignment of error for our consideration. His sentence was stayed pending this appeal.

II.

## ASSIGNMENT OF ERROR I

THE INVESTIGATORY STOP, INVESTIGATORY DETENTION, AND ARREST OF [MR. BROWNING] VIOLATED [HIS] FOURTH AND FOURTEENTH AMENDMENT PROTECTIONS AGAINST UNREASONABLE SEARCH AND SEIZURE UNDER THE U.S. AND OHIO CONSTITUTIONS.

{¶12} "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact." *State v. Campbell*, 9th Dist. No. 05CA0032-M, 2005-Ohio-4361, ¶ 6. "The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact." *Id.* This Court will accept the factual findings of the trial court if they are supported by some competent, credible evidence. *See State v. Balog*, 9th Dist. No. 08CA0001-M, 2008-Ohio-4292, ¶ 7, citing *State v. Searls*, 118 Ohio App.3d 739, 741 (5th Dist.1997). "However, the application of the law to those facts will be reviewed de novo." *Balog* at ¶ 8.

{¶13} In his first assignment of error, Mr. Browning argues, among other things, that the traffic stop amounted to an unconstitutional seizure because the stop was not supported by reasonable, articulable suspicion. In support of this argument, Mr. Browning contends that Officer Price did not point to a specific offense that he had committed, or was in the process of committing, prior to initiating the traffic stop. Based upon the record before us, we agree.

{¶14} It is well-settled that "[a] traffic stop constitutes a seizure within the meaning of the Fourth Amendment." *Campbell* at ¶ 10, citing *Whren v. United States*, 517 U.S. 806, 809-810 (1996). "However, an investigative stop of a motorist does not violate the Fourth Amendment if the officer has a reasonable suspicion that the individual is engaged in criminal activity." *Campbell* at ¶ 10, citing *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999). "To justify a

particular intrusion, the officer must demonstrate 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.'" *Weisner* at 299, quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). "In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as 'viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *State v. Sweatt*, 9th Dist. No. 25147, 2010-Ohio-2989, ¶ 7, quoting *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (C.A.D.C.1976). "Thus, 'if the specific and articulable facts available to an officer indicate that a driver may be committing a criminal act, which includes the violation of a traffic law, the officer is justified in making an investigative stop.'" *State v. Hoder*, 9th Dist. No. 03CA0042, 2004-Ohio-3083, ¶ 8, quoting *State v. Shook*, 9th Dist. No. 93CA005716, 1994 WL 263194, * 2 (June 15, 1994). However, "'[a]n officer's reliance on a mere 'hunch' is insufficient to justify a stop.'" *State v. Wagner-Nitzsche*, 9th Dist. No. 23944, 2008-Ohio-3953, ¶ 11, quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002).

{¶15} We look to our decision in *State v. Wagner-Nitzsche* for guidance in the present matter. In *State v. Wagner-Nitzsche* at ¶ 2-3, an officer was monitoring Ms. Wagner-Nitzsche's house due to alleged drug activity. While watching her house, the officer observed activity at Ms. Wagner-Nitzsche's car. *Id.* at ¶ 3. He waited for the car to leave and attempted to stop it, however, it made a "hard turn" onto another street and then a "hard turn" into a driveway. *Id.* at ¶ 4. The officer "felt [this] was suspicious," so he waited approximately ten minutes for the car to leave the residence and then he stopped the car. *Id.* at ¶ 5. Ultimately, Ms. Wagner-Nitzsche got out of the car and the officer noticed a pill bottle in her pants pocket. *Id.* The pill bottle contained a bag of marijuana, Vicodin pills, and Percocet pills. *Id.* The officer advised Ms.

Wagner-Nitzsche that, "unless she had a prescription, possession of Percocet was a fifth-degree felony." *Id*. At that time, Ms. Wagner-Nitzsche and the officer went to her house to search for the prescription. *Id*. at ¶ 6. While at the house, the officer saw, in plain view, items used in the production of methamphetamine. *Id*. He later obtained a search warrant to recover additional evidence. *Id*.

{¶16} Ms. Wagner-Nitzsche filed a motion to suppress contending that "the traffic stop of [her] vehicle was not supported by reasonable suspicion, that the initial search of [her] home was conducted without a warrant, and that the search warrant relied on information that was illegally gathered and was not supported by probable cause." *Id*. at ¶ 7. Under the totality of the circumstances, the trial court granted the motion stating that the stop "'was not reasonable and was not supported by a particularized suspicion that criminal activity was afoot. [The officer's] observations amount to nothing more than an unsupported hunch or suspicion that criminal activity might be afoot since it is possible that someone might be trying to move a Meth lab.'" *Id*. at ¶ 8.

{¶17} In affirming the trial court's decision, we concluded that the officer did not have reasonable suspicion to stop Wagner-Nitzsche's car because "[h]e did not actually see anyone place anything in the vehicle and stopped it on the mere 'chance [that] she was moving a meth lab from her house.'" *Id*. at ¶ 15. We stated that the officer's testimony, in this regard, was the same as if he said that he relied on a mere hunch. *Id*.

{¶18} Additionally, the present matter is clearly distinguishable from our recent decision in *State v. Floyd*, 9th Dist. No. 11CA010033, 2012-Ohio-990. In *Floyd* at ¶ 1, a police officer of 16 years observed Mr. Floyd's truck turn into a driveway and go behind a building at 11:50 p.m. The officer found this behavior suspicious "because the business that occupied the building was

closed for the day and there had been a number of break-ins in the area." *Id*. The officer parked his cruiser across the street from the building and called for back-up in case there was a burglary in progress. *Id*. Approximately two minutes later, the officer saw Mr. Floyd drive back out from behind the building and reenter the roadway. *Id*. At that time, the officer initiated a traffic stop. *Id*.

{¶19} After being arrested for OVI and operating a vehicle with a prohibited blood-alcohol concentration ("BAC"), Mr. Floyd moved to suppress the evidence because the officer did not have reasonable suspicion to initiate the traffic stop. *Id*. The trial court denied his motion, Mr. Floyd pled no contest to the BAC count, and was convicted of the same. *Id*. Mr. Floyd appealed and, in affirming the trial court's denial of the motion to suppress, we stated:

> Two minutes would not have given a thief much time to break into the business, but the driver of the truck could simply have been in the process of casing buildings in the area or have quickly loaded something that was behind the building into the bed of his truck. Accordingly, although this case presents a close question, based on the time of day, [the officer's] experience, the fact that the businesses to which the driveway led were closed, and the fact that there had been "numerous break-ins [* * *] burglaries and all kind of crimes committed *specifically* in that area,' we conclude that, viewing the evidence 'as it would be understood by those in law enforcement," the totality of the circumstances supports the [trial court's] determination that [the officer] had reasonable and articulable suspicion to justify stopping [Mr. Floyd's] truck.

*Id*. at ¶ 20, quoting *State v. Andrews*, 57 Ohio St.3d 86, 88 (1991). (Emphasis added.)

{¶20} Here, unlike *Floyd* where the officer sincerely, and reasonably, believed that a burglary may be in progress, Officer Price did not state any reasonable, articulable suspicion for stopping Mr. Browning. Officer Price admitted that he only stopped Mr. Browning because he was driving "a suspicious vehicle in the area." Further, he admitted that (1) there had not been any recent burglaries in that particular area, (2) he did not recall seeing anything denoting that Mr. Browning initially stopped his car on private property, (3) it did not appear that Mr.

Browning was casing a house, and (4) he did not observe Mr. Browning commit any traffic infraction or criminal activity. Additionally, Officer Price testified that "I know it's a dead end, so I figured, well, *if they're legit, maybe they'll turn around and come back.* So I went down the road a little bit, sat in my cruiser, and sure enough the car came back out, got on State Route 21, went southbound." (Emphasis added.) Then, Officer Price contradicted himself, stating "I figured it might have been someone who could have been visiting from out of state, but being that they *came right back out*, I thought I'd better pull them over and *see what's going on*." (Emphasis added.)

{¶21}  Based upon the foregoing testimony, even though Officer Price did not believe that Mr. Browning was engaged in criminal activity, he still initiated the traffic stop. As stated above, an officer's reliance upon a mere hunch is not sufficient to justify a stop. *See Wagner-Nitzsche* at ¶ 11. In light of Officer Price's decision to initiate a stop to see what Mr. Browning might be up to, we cannot say that Officer Price had a reasonable, articulable suspicion of criminal activity to justify the traffic stop. Therefore, the trial court erred in denying Mr. Browning's motion to suppress.

{¶22}  Mr. Browning also argued that Officer Price did not have probable cause to arrest him for OVI. However, because Officer Price did not have reasonable, articulable suspicion to initiate the traffic stop, we decline to address the secondary issue of probable cause.

{¶23}  Mr. Browning's sole assignment of error is sustained.

{¶24}  Accordingly, the judgment of the Barberton Municipal Court is reversed and this cause is remanded for further proceedings consistent with this decision.

Judgment reversed,
and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Barberton Municipal Court, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

CARLA MOORE
FOR THE COURT

BELFANCE, J.
CONCURS.

WHITMORE, P. J.
DISSENTING.

{¶25} I would affirm the judgment of the trial court because I would conclude that the court properly denied Browning's motion to suppress.

{¶26} The Fourth Amendment to the United States Constitution, as applied to the states through the Fourteenth Amendment, prohibits unreasonable searches and seizures. *Accord* Ohio

Constitution, Article I, Section 14. This Court has identified three types of police encounters in the context of the Fourth Amendment: (1) consensual encounters, (2) investigatory stops, and (3) seizures that equate to an arrest. *State v. Patterson*, 9th Dist. No. 23135, 2006-Ohio-5424, ¶ 11. To justify an investigative stop, an officer must point to "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Maumee v. Weisner*, 87 Ohio St.3d 295, 299 (1999), quoting *Terry v. Ohio*, 392 U.S. 1, 21 (1968). In evaluating the facts and inferences supporting the stop, a court must consider the totality of the circumstances as "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Bobo*, 37 Ohio St.3d 177, 179 (1988), quoting *United States v. Hall*, 525 F.2d 857, 859 (D.C.Cir.1976). A totality of the circumstances review includes consideration of "(1) [the] location; (2) the officer's experience, training or knowledge; (3) the suspect's conduct or appearance; and (4) the surrounding circumstances." *State v. Biehl*, 9th Dist. No. 22054, 2004-Ohio-6532, ¶ 14, citing *Bobo*, 37 Ohio St.3d at 178-179.

{¶27} Officer Price, an officer with twenty-two years of experience, testified that he first observed a car parked in a private drive off Copley Road at 12:43 a.m. Officer Price observed a man standing outside the car when he drove past. Deciding to investigate further, Officer Price slowed his patrol car, put the car into reverse, and backed up to examine the parked car further. He noted that the parked car had out-of-state license plates. Officer Price testified that when the man standing outside the parked car saw Officer Price's marked police cruiser, the man entered the car on the driver's side and drove forward down the private lane. Officer Price decided to remain in the area because the car aroused his suspicions. He indicated that the private drive on which he observed the man is a dead end drive that connects the main road to two or three

houses, the residents of those houses had been living there for some time, and, as far as Officer Price knew, none of the residents had out-of-state license plates. Officer Price also was aware that the police had experienced several problems in that area because one of the homes had been burglarized at some point in the past. Officer Price decided to drive a short distance down the road, turn off his headlights, and observe the private drive from his vehicle. Approximately two to three minutes later, the car emerged from the private drive. Officer Price then executed a traffic stop.

{¶28} This Court recently engaged in an in-depth review of reasonable suspicion cases in *State v. Floyd*, 9th Dist. No. 11CA010033, 2012-Ohio-990. In *Floyd*, an officer with sixteen years of experience observed a truck turn into a driveway and drive behind a building at 11:50 p.m. The officer was aware that the building had closed for the day and that the area had been the target of numerous burglaries. Approximately two minutes later, the officer saw the truck emerge from behind the building. The officer then stopped the truck and discovered that its driver was intoxicated. In concluding that reasonable suspicion for the officer's stop existed, we rejected the appellant's contention that his actions were consistent with innocent behavior. We held that "[t]he possibility of an innocent explanation * * * does not deprive an officer of the capacity to entertain a reasonable suspicion of criminal conduct." *Floyd* at ¶ 18. Although we acknowledged that the case presented a "close call," we concluded that "based on the time of day, [the officer's] experience, the fact that the businesses to which the driveway led were closed, and the fact that there had been numerous break-ins * * * burglaries and all kind of crimes committed specifically in that area," reasonable suspicion for the stop existed. (Internal quotations omitted.) *Id.* at ¶ 20.

**{¶29}** As in *Floyd*, Officer Price had a great deal of experience and encountered Browning's car around midnight. Although the private drive led to residential homes, Officer Price was familiar with the residents of those homes and was not aware that any of the residents had out-of-state license plates. More importantly, as soon as Browning saw Officer Price, he got into his vehicle and drove away. He then waited several minutes until it appeared that Officer Price's cruiser had gone before emerging from the private drive. Based on his observations, Officer Price reasonably could have concluded that the driver was not there for a legitimate purpose (e.g., visiting a resident of one of the homes) and had pulled his car forward in hopes of evading Officer Price. *See, e.g., State v. Walker*, 9th Dist. No. 25744, 2011-Ohio-5779, ¶ 17; *State v. Duncan*, 9th Dist. No. 07CA0050, 2007-Ohio-6004, ¶ 11. Much like *Floyd*, the facts in this case present a "close call." *Floyd* at ¶ 20. Nevertheless, based on Officer Price's experience, the time of day, his familiarity with the area, and the evasive behavior he observed, I would conclude that Officer Price possessed reasonable suspicion before stopping Browning's car. Although innocent explanations for Browning's behavior undoubtedly existed, "[t]he possibility of an innocent explanation * * * does not deprive an officer of the capacity to entertain a reasonable suspicion of criminal conduct." *Id.* at ¶ 18. Because I would conclude that the trial court properly concluded that Officer Price possessed reasonable suspicion under the facts and circumstances presented herein, I respectfully dissent.

**{¶30}** Having decided that Officer Price lacked reasonable suspicion to stop Browning's car, the majority did not reach the issue of probable cause. "[P]robable cause is the existence of circumstances that warrant suspicion." *State v. Tejada*, 9th Dist. No. 20947, 2002-Ohio-5777, ¶ 8, quoting *State v. Young*, 146 Ohio App.3d 245, 2001-Ohio-4284, ¶ 23 (11th Dist.). "[T]he standard for probable cause does not require a prima facie showing of criminal activity; rather,

the standard requires 'only a showing that a probability of criminal activity exists.'" *Tejada* at ¶ 8, quoting *Young* at ¶ 23. Moreover, in analyzing whether officers had probable cause to proceed, reviewing courts will look to the totality of all the facts and circumstances as they existed at the time of the incident. *See State v. Fry*, 9th Dist. No. 23211, 2007-Ohio-3240, ¶ 36, citing *Illinois v. Gates*, 462 U.S. 213, 233 (1983).

{¶31} Once Officer Price stopped Browning, he made several observations. Browning's eyes were glassy and bloodshot, his pupils were dilated, his speech was slurred, and he was omitting a moderate to strong odor of alcohol. Nevertheless, Browning refused to admit that he had consumed any alcohol whatsoever. He also refused to participate in any field testing and became uncooperative to the point of combative when Officer Price tried to engage him. Officer Price eventually required assistance to forcibly remove Browning from the vehicle. Officer Price testified that, based on his observations and over twenty years of experience, Browning was intoxicated. I would conclude that, based on the totality of the circumstances, Officer Price possessed probable cause to arrest Browning for a violation of R.C. 4511.19. *See State v. Napier*, 9th Dist. No. 11CA0006, 2012-Ohio-394, ¶ 23. As such, I would affirm the trial court's decision to deny Browning's motion to suppress.

APPEARANCES:

STEPHANIE YUHAS, Attorney at Law, for Appellant.

MICHELLE BANBURY, Attorney at Law, for Appellee.