[Cite as *State v. Davenport*, 2012-Ohio-4427.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

STATE OF OHIO

    Appellee

    v.

DEVON R. DAVENPORT

    Appellant

C.A. No.     11CA010136

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF LORAIN, OHIO
CASE No.    09CR077565

DECISION AND JOURNAL ENTRY

Dated: September 28, 2012

---

BELFANCE, Judge.

{¶1} Defendant-Appellant Devon Davenport appeals from the Lorain County Court of Common Pleas' decision denying his motion to suppress. For the reasons set forth below, we reverse.

I.

{¶2} On January 12, 2009, around 1 p.m. in the afternoon, Byron Foxx, a trooper with the Ohio State Highway Patrol, stopped a vehicle with a California license plate for following too closely behind a tractor trailer. The car was rented to Mr. Davenport's girlfriend, who was not present at the stop, but the driver of the car, Ymari Lewis, was identified on the rental agreement as an additional driver. Mr. Davenport was a passenger in the vehicle. Mr. Lewis told Trooper Fox that they were driving to Buffalo, New York. Trooper Foxx called a K-9 unit to walk around the vehicle and began running Mr. Lewis' and Mr. Davenport's New York driver's licenses. Trooper Foxx conducted computer checks and determined that neither Mr.

Lewis nor Mr. Davenport had outstanding warrants. He did not write a citation but instead issued a warning for the violation. When Trooper Richard Menges arrived on the scene, the Defendants were each placed in the back of one of the cruisers. Trooper Menges then walked K-9 Johnny around the vehicle. The dog alerted on the left, rear-door seam and a block of marijuana was found in the trunk of the vehicle.

{¶3}    Mr. Davenport was indicted on February 18, 2009, for one count of possession of drugs in violation of R.C. 2925.11(A), a felony of the third degree, and one count of possession of drug paraphernalia, a misdemeanor of the fourth degree. Mr. Davenport filed a motion to suppress asserting that the trooper did not have probable cause to stop the vehicle, that the trooper lacked reasonable suspicion to detain Mr. Davenport while waiting for the K-9, that the State must establish that the K-9 was properly trained and certified, and that Mr. Davenport was unlawfully interrogated by the troopers at the scene. The State responded in opposition and a hearing was held on the motion.[1] The trial court denied the motion, concluding on the record that it found Trooper Foxx's testimony concerning the purpose of the stop to be credible and thereby concluding that Trooper Foxx had probable cause to stop the vehicle, that the dog sniff occurred subsequent to when the purpose of the stop should have been completed, and that Trooper Foxx had reasonable suspicion to prolong the stop to allow time to conduct the dog sniff of the vehicle. Mr. Davenport thereafter entered a no-contest plea and was sentenced to a total of three years of community control. Mr. Davenport has appealed, raising two assignments of error for our review.

---

[1] The hearing on the motion to suppress was a combined hearing involving both Mr. Davenport's motion and Mr. Lewis's motion.

II.

ASSIGNMENT OF ERROR I

THE TRIAL COURT ERRED IN DENYING DAVENPORT'S MOTION TO SUPPRESS BY FINDING THAT OFFICERS HAD REASONABLE ARTICULABLE SUSPICION OF DRUG ACTIVITY AND THAT OFFICERS WERE THEREFORE JUSTIFIED IN PROLONGING DAVENPORT'S DETENTION WHILE AWAITING ARRIVAL OF THE DRUG-SNIFFING K-9.

{¶4}    Mr. Davenport asserts in his first assignment of error that the trial court erred in denying his motion to suppress as Trooper Foxx lacked reasonable suspicion to prolong the stop while waiting for the K-9.  We agree.

{¶5}    Generally, "review of a motion to suppress presents a mixed question of law and fact."  *State v. Burnside*, 100 Ohio St.3d 152, 2003–Ohio–5372, ¶ 8.  Thus, we defer to the trial court's findings of fact if they are supported by competent, credible evidence and review the trial court's application of the law to the facts de novo.  *State v. Metcalf*, 9th Dist. No. 23600, 2007–Ohio–4001, ¶ 6.

{¶6}    The Supreme Court of Ohio has stated that:

> when detaining a motorist for a traffic violation, an officer may delay the motorist for a time period sufficient to issue a ticket or a warning.  This measure includes the period of time sufficient to run a computer check on the driver's license, registration, and vehicle plates.  In determining if an officer completed these tasks within a reasonable length of time, the court must evaluate the duration of the stop in light of the totality of the circumstances and consider whether the officer diligently conducted the investigation.

(Internal quotations, alterations, and citations omitted.)  *State v. Batchili*, 113 Ohio St.3d 403, 2007-Ohio-2204, ¶ 12.  However, "the detention of a stopped driver may continue beyond [the normal] time frame when additional facts are encountered that give rise to a reasonable, articulable suspicion of criminal activity beyond that which prompted the initial stop."  (Internal quotations and citations omitted.)  *Id.* at ¶ 15.  Such analysis "encompasses the totality of the

circumstances and th[us] a court may not evaluate in isolation each articulated reason for the stop." *Id.* at ¶ 17. "The 'reasonable and articulable suspicion' analysis is based on the collection of factors, not on the individual factors themselves." *Id.* at ¶ 19. Reasonable suspicion requires that an officer "'be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" *State v. Floyd*, 9th Dist. No. 11CA010033, 2012-Ohio-990, ¶ 3, quoting *Terry v. Ohio,* 392 U.S. 1, 21 (1968). However, "'[a]n officer's reliance on a mere "hunch" is insufficient to justify a stop'" *Floyd* at ¶ 5, quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002), quoting *Terry* at 27, or to expand the scope of a traffic stop. *State v. Hawkins*, 2d Dist. 20739, 2005-Ohio-1714, ¶ 15-16.

{¶7} In the instant matter, the trial court concluded on the record that "the sniffing by the dog did not occur within the appropriate time frame based upon the initial stop and investigation done." This finding has not been challenged on appeal. However, the trial court did conclude that Trooper Foxx possessed a reasonable articulable suspicion of criminal activity that justified prolonging the stop until the K-9 arrived. Thus, we consider only whether, under the totality of the circumstances, the presence of the above combination of factors amounts to a reasonable suspicion.

{¶8} During the afternoon of January 12, 2009, Trooper Fox was "working traffic" on Interstate 80 in Lorain County when he observed a vehicle following too closely behind a tractor trailer. There was no testimony or evidence presented that any other traffic violations were committed. Trooper Foxx initiated a traffic stop and observed the vehicle had two occupants: Mr. Lewis, the driver, and Mr. Davenport, the passenger. Trooper Foxx testified that Mr. Lewis seemed a little nervous; Trooper Fox stated that, when he pulled Mr. Lewis over, Mr. Lewis asked Trooper Foxx if he pulled him over because he did not have a front plate. Also, Trooper

Foxx noticed a slight tremor in Mr. Lewis' hand. Mr. Lewis provided Trooper Foxx with a rental agreement for the vehicle which indicated that the vehicle was rented in California to a third party who was not present at the stop; however, Mr. Lewis was listed as an additional driver. Trooper Foxx came to discover that the third party was Mr. Davenport's girlfriend. Trooper Foxx stated that the fact that Mr. Lewis was listed as an additional driver was not a criminal indicator and that, when there is a vehicle rental by a person who is not there—"it's almost like a criminal indicator." He additionally testified that using a rental car is a criminal indicator. Further, Trooper Foxx testified that the vehicle had a "lived-in look" with papers and trash scattered around the car and that this was a criminal indicator. He also testified that California is a source state for drugs. Trooper Foxx agreed he would find the existence of the same criminal indicators if confronted with a family in a messy rental vehicle with the parents as additional drivers of the vehicle and the grandparent as the renter of the vehicle.

{¶9} The video of the stop indicates that the Defendants advised the trooper that they were in California for about a week visiting Mr. Davenport's girlfriend and that they were headed to New York for a court appearance that day. Both Defendants had New York driver's licenses, and one of the Defendants made reference to his mother being in Buffalo. In addition to the observations articulated by Trooper Foxx at the suppression hearing, the trial court also noted that Mr. Davenport was not listed as an additional driver on the rental agreement, that the Defendants indicated they were late to court in New York but they would not have made it to the court before the court closed, and that it was a one-week lease of the vehicle but there was no indication that the car would be dropped off in New York.

{¶10} Based on the totality of the circumstances, we cannot say that Trooper Foxx possessed reasonable suspicion of criminal activity to prolong the stop while waiting for the K-9.

We note that, unlike many other cases in which reasonable suspicion was found, here there was no testimony that the Defendants provided conflicting statements, false information, had outstanding warrants, or had an inordinate number of air fresheners in the vehicle. *See State v. Polk,* 5th Dist. No. 11CAA010006, 2011-Ohio-4598, ¶ 23-24; *State v. Williams,* 9th Dist. No. 09CA009679, 2010-Ohio-3667, ¶ 18; *State v. Williams,* 12th Dist. No. CA2009-08-014, 2010-Ohio-1523, ¶ 20; *State v. Sherrod,* 11th Dist. No. 2009-L-086, 2010-Ohio-1273, ¶ 21; *State v. Graham,* 12th Dist. No. CA2008-07-095, 2009-Ohio-2814, ¶ 21; *State v. McDade*, 5th Dist. No. 2007CA00092, 2008-Ohio-4885, ¶ 34; *State v. Henry*, 11th Dist. No. 2007-L-082, 2007-Ohio-6732, ¶ 29. The totality of the circumstances does not amount to a reasonable suspicion of criminal activity that would justify prolonging the stop. Instead, it appears that Trooper Foxx had a continuing hunch in light of some of his observations. It is true that "[t]he relevant inquiry in determining whether reasonable suspicion exists is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of non-criminal acts." (Internal quotations and citations omitted.) *Floyd*, 2012-Ohio-990, at ¶ 18. Nonetheless, the constellation of factors present in this case does not create a reasonable suspicion that Mr. Davenport was engaged, or about to be engaged, in criminal activity. Instead, this situation seems far from atypical or unusual. Often people rent cars when traveling. Further, it is not uncommon for people traveling under a tight deadline to have a messy vehicle, particularly when the people are running late. The inclusion of the facts that the car was from California, that the person who rented the car was not present, and that the Defendants said they were late for a court date, while perhaps not common, does not tip the scales, particularly in light of the fact that the additional driver on the rental agreement was the driver of the vehicle at the time of the stop.

Accordingly, we conclude the trial court erred in denying Mr. Davenport's motion to suppress, and we sustain Mr. Davenport's first assignment of error.

ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED TO THE DETRIMENT OF DAVENPORT WHEN IT DETERMINED THAT TROOPER FOXX HAD PROBABLE CAUSE TO STOP THE VEHICLE.

**{¶11}** Mr. Davenport asserts in his second assignment of error that the trial court erred in concluding that Trooper Foxx had probable cause to stop the vehicle, and, thus, the trial court erred in denying Mr. Davenport's motion to suppress.

**{¶12}** In light of our resolution of Mr. Davenport's first assignment of error, we decline to address his second assignment of error. *See* App.R. 12(A)(1)(c).

III.

**{¶13}** In light of the foregoing, we reverse the judgment of the Lorain County Court of Common Pleas denying Mr. Davenport's motion to suppress and remand the matter to the trial court for proceedings consistent with this opinion.

Judgment reversed<br>and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the

period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

_____
EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
CONCUR

APPEARANCES:

DENISE G. WILMS, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and MARY R. SLANCZKA, Assistant Prosecuting Attorney, for Appellee.